Hello again. My name is James Laughlin. In this case, I represent the appellant, Anthony Pendleton. With the court's permission, I'd like to reserve two minutes of my time for rebuttal, and I will keep an eye on the clock. The primary issue in this case is whether the district court procedurally erred in imposing a high-end sentence of 41 months based on Mr. Pendleton's failure to admit his guilt at sentencing. Mr. Pendleton had a constitutional right to go to trial, and even at sentencing, he retained a constitutional right to not incriminate himself and a right to appeal. As this court held in Watt, a sentencing court can't consider against a defendant any conduct protected by the Constitution. It later explained in Lafayette and Vance that this constitutionally required rule prohibits a district court from denying an acceptance of responsibility adjustment under 3E1.1 on the basis that the defendant refused to talk to the probation office by invoking his right against self-incrimination. Let me be clear. Mr. Pendleton has not and is not contending he should have gotten an acceptance of responsibility adjustment. His decision to go to trial and to later not try to present affirmative evidence that would satisfy 3E1.1 cost him those three levels, which resulted in a one-fifth increase in the offense level from 24 to 30 months up to 33 to 41 months. The question here is whether the failure to waive constitutional rights and unequivocally admit guilt can then be used to impose a high-end sentence. But that's not how I read what happened. As I read both what he said in his allocution and what the district judge said during sentencing, what the district judge is saying, you know, if you had somehow said you were sorry, if you somehow indicated some sense of remorse or repentance, I would feel differently. But you've never indicated any sense that you've done wrong. No, it never indicated any sense of remorse. That's what I see the district judge is doing. Why can't the district judge consider that as part of the sentencing decision? I don't think it can be a factor under this Court's precedent. I don't think it can be a factor weighed against the defendant in the final sentencing analysis. And I think under the facts as we have them here, the evidence suggests that Why can't it be considered as part of the sentencing calculation that the defendant exhibits no remorse? Because it's basically punishing him for exercising his constitutional rights. No, no, I don't think that's what's happening. The district judge clearly said, I'm not punishing you for exercising your constitutional rights. I'm punishing you because as I look at you here, you're not saying you're sorry. You're not saying that you're remorseful. But the implication is, you know, if you were in the same situation, you might do it again. Well, but Your Honor, by saying that, I'm not hearing you admit guilt. I'm not hearing you express remorse. That means I'm not hearing you waive your Fifth Amendment right to remain silent. No, no, he's admitting. He's been found guilty. He's not saying during his allocation, I didn't do it. But as the district judge heard it, the district judge heard no apology, no sense that it was wrong. Now, he's not saying he's not guilty. He's guilty. He's been held guilty. But he's not saying that he thought it was wrong. Well, but I think as Judge Kaczynski noted in a shell, I mean, it's exactly the opposite. In a dissent. If he had said that as a public lawyer, I would cringe. I would cringe if there was. But it's still a dissent. I didn't care today, so. Right, but I'm not asking this Court to do anything that would be contrary to the majority decision in a shell or any other precedent. I'm asking the Court to follow its precedent in Gonzalez, Watt, Lafayette, and Vance, which says that a sentencing court can't consider against a defendant any constitutionally protected conduct. Agreed. The question is whether that's what the court did in this case. Well, I think it did, because if you look at the record as a whole, the court's statement of reasons at the end of the sentencing basically parroted the probation office's recommendation letter. And most of what he said was quite either neutral or positive about Mr. Pendleton. He never said anything else that would justify a high-end sentence, because keep in mind, the probation office correctly – the probation office noted three different times in its report Mr. Pendleton did not waive trial, he did not plead guilty, and he's never talked about the offense. The probation office then correctly noted that while that deprived him of a 3E1.1 acceptance of responsibility adjustment, it was not a factor in aggravation that would support anything other than a low-end sentence. So when we compare what the probation office also said in its letter and how the court for the most part followed that statement of reasons, the only thing that happened at the sentencing hearing that was an additional reason, an additional factor the court found some concern with, was this statement about being very concerned that Mr. – and Mr. Pendleton, who I do – did apologize, but not to the satisfaction of the court. He said, I'm very sorry to be standing here. He was sorry for himself, but he never said, I'm sorry for the victims, I regret that this happened. There are a number of ways to express remorse without admitting guilt. So I'm not sure that your argument that an expression of remorse equates to an admission of guilt carries the day. I think that every further step a defendant takes down that road could come back to haunt him if he was successful in getting a retrial. And that's why, as I pointed out in the brief, constitutionally effective – I have to advise the defendant in that position that he risks effectively giving up his appeal if he says anything that could be later construed as an admission of guilt. Well, you know, I'm very sympathetic to that position in certain circumstances. There are some circumstances where the defense at trial is, I didn't do it, I'm innocent, you got the wrong guy. And we do see these cases, and they're heartbreaking. Somebody's been in jail for 20 years, and he steadfastly says, I'm innocent of the charges. He comes before the parole board repeatedly, and the parole board wants him to express remorse for what he did, and he refuses because he says, I never did it. But that really has not been Mr. Pendleton's defense here. The evidence against him is very strong. He never said, listen, it was some other guy who had filled out all these forms. He didn't testify at trial, but the defense at trial was there were three defendants and that the government had not proved that anybody other than the two other defendants were actively involved in it. Yeah, I know. But there is a certain category of case where I feel quite strongly that your argument is a good one. This is not one where the innocence of Mr. Pendleton is, in my mind, in any way in serious doubt. And the appeals that he's got are not going to be insufficient evidence. He does not have a Jackson claim. No, Joan, no Jackson claim has been made. And for him now to say, I was afraid to admit guilt in my allocution because it would be held against me. Well, if you were making a Jackson claim, I'd be more sympathetic to your argument, but he's not making that claim. Well, Your Honor, I disagree that that should be the relevant factor because he, first of all, Mr. Pendleton is a layperson. He relies on his lawyers. The lawyers who go through the trial and preserve issues, at least in our office, are focused on trial issues. They're, for the most part, trial lawyers. We have an appellate unit, and they have to advise the clients based on the situation at that time, which is you've gone to trial. We've raised several things that might entitle you to a retrial on appeal. We're not going to know that until an appellate lawyer looks at it later on. But for now, if you don't want to risk, you know, putting yourself in a position where you effectively give up your right to appeal, even if you get it, your new trial. Well, give up your right to appeal basically on the sense of you didn't do it. Right. Well, I mean, as I think Judge Kuczynski eloquently stated, you know, like once you lay your heart out sufficiently to the judge to get leniency in sentencing, you know, what jury wouldn't take those same words against you in determining your guilt at a retrial? And I do think it's a touchy situation. And I think that what this Court did in Cortez, Laupere, and Watt is the correct approach you should take here. If the Court has any doubt whatsoever that the Court might have based part of its decision to impose a high-end sentence on his constitutionally protected conduct, it should vacate and remand to let the judge revisit the sentence. Because that's... Should we presume impropriety when a judge imposes a high-end sentence? I don't think in every circumstance. I think in this circumstance... Well, in this circumstance, also said, he said, and of course if there were acknowledgment of wrongdoing, then credits would be given for that. But as we just heard, and this is from a prepared statement, this isn't speaking from the cuff. This is prepared, that he is sorry for standing here before the Court today. And he apologized to those who have been hurt. So none of that indicates an active acknowledgment that he himself has been guilty of any wrongdoing whatsoever. Now, this is what the sentencing judge said. Yes. And I think that reflects that that factor was, if not the driving force and a very significant factor in its ultimate decision to impose a high-end sentence. Well, it's a wash. He doesn't take that as an acceptance of responsibility or of remorse. But there's nothing else, Your Honor, in the record to reflect, then, why he gave a high-end sentence. Again, he parroted the language of the – that's used in the probation officer's letter, which is fairly neutral and kind to Mr. Pendleton. It notes that... Yeah, but since when is the district judge bound by a probation officer's recommendation? It's not bound by it, but we need to have something in there, in the record, to figure out why the Court imposes high-end sentences. It seems like the judge put quite a bit in the record explaining why he was doing a high-end sentence. But my response to that would be that what he did put into the record suggests he was doing it for an improper – constitutionally improper reason. Why don't we hear from the government, and we'll give you a chance to respond. Good morning, Your Honors. May it please the Court, Brian Klein for the United States. The district court did not improperly punish this defendant for failing to accept responsibility or going to trial. All the district court did was not give him credit for his faux contrition in his letter. In his what? Faux. F-A-U-S. His fake contrition. I got it. Well, we full understand what you're saying. Yes, Your Honor. Okay. The district court explicitly stated that fact on the record and explicitly stated, as Your Honor said, that he wasn't just going to give this defendant credit for what he had been doing in his letter or when he made his statement. And then the district court sentenced the defendant who richly deserved his high-end within guidelines sentence. Well, I'm not sure he did, but that's not my business. Unless the court has any questions for the government, the government will send it on its case. Well, I actually am interested in this because it's a very interesting problem because I'm quite sympathetic to the situation where the defendant may at the time of allocution think, or his lawyers may think, that there's a possibility of retrial. There's a possibility of a Jackson claim. And he's worried that if he stands up there and says, you know, you got me, that I'm properly convicted, and I'm so sorry that I did it, I'll never do it again, that that statement may come back to haunt him. What's your response to that? Your Honor, let me step back for a second and look at what would happen if we had that precedent where the defendant can only say certain limited things and then gets basically a second bite at the apple. What would happen was... What do you mean a second bite at the apple? Well, because what would happen would be defendants would submit a neutral kind of fake confession like he did or a contrition like he did here. We're not talking confession. We're talking about am I sorry or not. And then after reviewing the appellate record, the defendant would say, oh, wait, I don't have any good claims on the trial, what happened at the case, but now I want to go back and I want to be re-sentenced. Now I'm willing to fully disclose what happened. And what would happen is you'd have cases coming up and then going back down. And that's what defendants would undoubtedly do. They'd game the system. No, I don't understand what you're telling me. The argument I heard is that if he has said, you know, I really am guilty and I'm very, very sorry that I did it and so he just throws himself at the mercy of the court saying, you know, I don't know what was in my head, da-da-da-da. The defense lawyer is saying, well, if we succeed in getting a new trial, that statement is going to be used against him. Is that true? Yes, Your Honor. Well, then, boy, he's kind of in a box. Because if he has a realistic chance of getting a new trial, this statement will be used against him. And that sounds as though it's a violation of the Fifth Amendment then. Well, no, the statement will be used again at the future trial, not at that sentencing. That's what I mean. It will be used against him at a future trial. So in order to get some reduction in sentencing, he's got to confess to something that he thinks he has a pretty good chance of reversing on appeal and then putting the government to its proof again. Your Honor, you have identified a tension that is there. This defendant does. All defendants have this choice. Well, maybe he has identified it. Maybe he's right. Well, Your Honor, let's walk through what would happen in the case you've laid out, which is that the defendant who thinks he may have a good appeal won't make that statement, okay? And he'll accept his sentence and he'll go up and appeal and then he'll come back and he'll believe he's going to win his trial. The defendant, in this case, who was squarely convicted, there was overwhelming evidence of his guilt, the trial, and I was one of the trial assistants, was very fair for this defendant. And the fact that... I'm glad to know that the U.S. attorney thinks that he was very fair, okay. And so then this defendant, he had a choice here. He could have shown contrition. He could have gotten credit for it. He chose not to. Well, he chose not to. I have a sneaking suspicion his lawyers chose it for him. I mean, this was a prepared statement. Well, he wrote a letter and he got up there and gave a statement, and I believe that this defendant, you know, whatever his lawyers advised him, none of us know, but he did do those two things. He wrote a letter and he gave a statement, and that's his own words. So I think, you know, again, I just go back to the gaming of the system. Although you've identified this tension there, that's what I believe would happen. A practical... Stepping back and being practical about it, that precedent would create the system where defendants don't say anything where they do this faux, fake contrition, and then they see what their appellate rights are, and if they don't think they're that great that they want to appeal the sentencing, then they'll say, well, I want to be resentenced now. Now I want to go and tell you how sorry I am and I feel so horrible, and then they'd be resentenced. But if they thought they had something else, so you create this, you know, an impractical... Or it could be a system where we say to the district judge, you know, you're not allowed to place a great deal of weight or maybe not allowed to put any weight at all on expressions of contrition that would necessarily imply admission of guilt because of the position of which the defendant is. You may assume for purposes of sentencing that they're apologizing. Your Honor, but I think that would also set a bad precedent because under the 3553A factors, the judge is supposed to consider the history and characteristics of each defendant. And so part of considering someone, who they are, and it's an individualized assessment of that defendant, is looking at who they are when they come to be sentenced. Have they changed? Have they expressed remorse? Have they gone, you know, and started to pay back the victims, if that's the case, or have they apologized to the victims? And so the judge is really tasked with trying to understand who this defendant is. How are you going to limit your rule? Let's say this is a case where, which is not this case, but a case where there was a very strong defense of it wasn't, I'm not the guy who did it. So I mean, we really did do have a genuine claim of innocence put on the table. The jury disagrees, but he still says I'm innocent. How does your system, the one you want, work in that circumstance? Is he supposed to say, well, I still think I'm innocent, I maintain I'm innocent, but I'm terribly, terribly sorry for what I did, and I hope I get accepted as a responsibility? Well, I don't think you can accept responsibility if you're not saying I did it. That's what I mean. I don't see how that would be acceptable. So this guy really is saying, you know, I didn't do it. This is a wrongful conviction. And you're putting him in a box and you're allowing the judge to convict him, to sentence him to a longer term because he refuses to say I'm sorry. No, Your Honor. Actually, that's not what I'm saying. It's a one-way ratchet, okay? You can get credit for contrition, genuine contrition, genuine remorse. Well, that's what I meant. That is to say the judge gives him a longer sentence because he doesn't express contrition. It would be inappropriate for a judge to ratchet it up, okay? You can get credit, but you can't ratchet up. That's not it. How much economics have you had? I was an economic major. Here we go. Then you know that up or down, add or subtract, it's a word game if you're saying he's not getting credit. The question is the sentence is longer if he expresses contrition, it's shorter if he doesn't express contrition, shorter if he doesn't. You can call it add or subtract, but the expression of contrition influences the length of the sentence. Now, you were an economics major. Yes, it was quite a few years ago. Mr. Pendleton worked for the IRS for 14 years, didn't he? Yes, he did. He was a longtime IRS official who knew exactly what he was doing was wrong. Yeah, yeah, right. And I'm asking the hypothetical, not this case, because it seems to me the evidence against him in terms of what he did is very strong. This is not a case where he says, listen, it was the other guy. I wasn't the shooter. I was home in bed. You know, whatever. So do your honors have any more questions for me? Okay, thank you. We took you over, but if you'd like a minute. I just asked the Court to look closely at the statement of reasons that Judge Wright gave at the end of the sentencing. It's pages 35 and 36. And the thing is, again, and this parallels the recommendation letter written by the Probation Office. It says it describes the offense in very general terms. It does note that he worked for the IRS for 14 years, but then says there's no evidence to suggest he gained any inside knowledge or useful information that helped him perpetrate this crime. It then talks about some of the mitigating factors. He's got a strong support family. The community doesn't require protection from him. He's an educated man with employable skills. He has this restitution judgment hanging over his head. And that's all. There's nothing there that would suggest why a high-end sentence is appropriate. Well, what do you mean there's nothing there? He had the entire PSR, and he had all of the background before him. So just because he makes just a couple of references there to the number of children doesn't mean that he doesn't have the entire background of this man before him. He's read it. He knows what it is. He's seen the PSR. That's true, Your Honor. But it's also incumbent upon him to give reasons as to why he's going to the high end, and that's what he hasn't done. He hasn't said, for example, he hasn't said I incorporate all the government's reasons for asking for a high-end sentence, or he hasn't said, well, the probation office. Well, but if he does include some of them, he doesn't have to specifically say I'm going to take this and this and this. He's got all this before him. He's heard all the arguments. He's tried the case. I understand that, Your Honor, but what's in the record suggests that the only thing he actually talked about, in addition to these relatively neutral factors, the thing that really seemed to cause him concern was my client not waiving his constitutional right against self-incrimination and unequivocally admitting guilt and expressing remorse. And I think that's what the record shows. Thank you. Thank both sides for their arguments, despite my teasing, good arguments on both sides.
judges: Mills, Fletcher, Rawlinson